# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

JOHN PHILLIP WRIGHT DUKEMAN, II, )
                                     )
         Plaintiff,             )
                                       )
      v.                        )
                                       )
STE. GENEVIEVE COUNTY, STE.        )
GENEVIEVE COUNTY SHERIFF'S        )    Case No. 1:24-CV-00149-NCC
DEPARTMENT, GARY STOLZER,          )
RICHARD PLACKE, CHARLES OCHS,      )
TRAVOR GREEN, and DYLON WYATT,    )
                                       )
         Defendants.         )

## **MEMORANDUM AND ORDER**

This matter is before the Court on Motions to Dismiss by Defendants Ste. Genevieve County, Ste. Genevieve County Sheriff's Department, Ste. Genevieve County Sheriff Gary Stolzer, Ste. Genevieve County Sheriff's Sergeant Charles Ochs, Ste. Genevieve County Sheriff's Deputies Travor Green and Richard Placke, and Missouri Highway Patrol Officer Dylon Wyatt (together "Defendants") (Docs. 3, 10).[1] Plaintiff John Phillip Wright Dukeman, II, ("Plaintiff" or "Dukeman") asserts eleven causes of action: excessive force under 42 U.S.C. § 1983 (Count I); failure to train, hire, supervise, and discipline under 42 U.S.C. § 1983 (Count II); malicious prosecution under 42 U.S.C. § 1983 (Count III); malicious prosecution under Missouri law (Count IV); conspiracy under 42 U.S.C. § 1985 (Count V); conspiracy under Missouri law (Count VI); negligence per se under Missouri law (Count VII); negligent

---

[1] On July 2, 2024, Plaintiff filed this action in the Circuit Court of Ste. Genevieve County, Missouri alleging violations of the U.S. Constitution and of Missouri state law (Doc. 1-4). On August 9, 2024, Defendants Ste. Genevieve County, Ste. Genevieve County Sheriff's Department, Ste. Genevieve County Sheriff Gary Stolzer, Ste. Genevieve County Sheriff's Sergeant Charles Ochs, and Ste. Genevieve County Sheriff's Deputies Travor Green and Richard Placke (together "County Defendants") removed the action to this Court based on federal question

supervision under Missouri law (Count VIII); strict liability under RSMo § 273.036 (Count IX); strict liability under RSMo § 322.145 (Count X); and negligence under Missouri law (Count XI) (Doc. 6).  Plaintiff brings claims against all named individuals in both their official and individual capacities.  The motions are fully briefed and ready for disposition.  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 30).

Defendants seek dismissal of all claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, Defendants' motions will be **GRANTED in part** and **DENIED in part**.  Plaintiff's claims of excessive force sufficiently allege a cause of action upon which relief can be granted.  All other claims will be dismissed without prejudice for failure to state a claim.

## I.  Background[2]

On November 8, 2020, Plaintiff was a resident at his mother's house in Bloomsdale, Missouri.  Sometime after 5:30 p.m., he had been resting in a heavily wooded area on the property behind the house for roughly two hours when law enforcement officers with Ste. Genevieve County Sheriff's Department and a Missouri Highway Patrol Officer[3] saw Plaintiff and attempted to arrest him.

Ste. Genevieve County Sheriff's Sergeant Charles Ochs and Deputy Travor Green were present in the wooded area with Missouri Highway Patrol Trooper Dylan Wyatt and all spotted Plaintiff.  Ste. Genevieve County Sheriff's Deputy Richard Placke acted in "concert" with

---

jurisdiction (Doc. 1).

[2] The following facts are taken from the complaint (Doc. 6).  For the purposes of this motion to dismiss, the facts are accepted as true.

[3] Plaintiff and Defendant Dylon Wyatt primarily refer to Wyatt's title as Trooper.  The Court will do the same.

Sergeant Ochs and Deputy Green (together the "County Officers") and Trooper Wyatt (all together the "Officers"), unleashing a police dog, Ares, without an audible K-9 warning or probable cause.  Plaintiff alleges that Sergeant Ochs, Ares' canine handler, did not maintain Ares on a leash during the arrest and did not control Ares.[4]  Plaintiff alleges that Deputy Green and Trooper Wyatt failed to intervene and permitted the "other officer" to let Ares attack and bite Plaintiff on his right arm, right thigh and groin, causing injury and the need for emergency medical care.  The complaint is unclear whether Deputy Placke was present for Plaintiff's arrest. All the Officers were under the chain of command of Ste. Genevieve County Sheriff Gary Stolzer, except Trooper Wyatt.

Plaintiff alleges that the Officers failed to command Ares and order that he cease his aggression after Plaintiff surrendered in the wooded area.  Plaintiff alleges that the Officers breached their duty to him when they failed to intervene and instead "encouraged" Ares, who continued to bite and maul Plaintiff beyond the scope of any bite-and-hold technique in violation of the Fourth Amendment.  Plaintiff was in a prone position.

Plaintiff alleges that Ste. Genevieve County (the "County"), Ste. Genevieve County Sheriff's Department (the "Department"), Sheriff Stolzer, and the Officers knew that Ares was vicious and had a prior history of biting and injuring individuals.  Plaintiff alleges that the Officers have engaged in other similar conduct.[5]  Plaintiff alleges that the County, the Department, Sheriff Stolzer and the Officers failed to follow their written guidelines (the "guidelines") for apprehension, use of force, and "K-9" use.

Regarding apprehension, the guidelines provide:

308.6 APPREHENSION GUIDELINES

---

[4] The Court will refer to the police dog as a canine or "K-9".

[5] Plaintiff does not specify what is the nature of the other similar conduct.

A canine may be used to locate and apprehend a suspect if the canine handler reasonably believes that the individual has either committed, is committing or threatening to commit any serious offense and if any of the following conditions exist:

(a)    There is a reasonable belief the suspect poses an imminent threat of violence or serious harm to the public, any deputy or the handler.

(b)    The suspect is physically resisting or threatening to resist arrest and the use of a canine reasonably appears to be necessary to overcome such resistance.

(c)    The suspect is believed to be concealed in an area where entry by other than the canine would pose a threat to the safety of deputies or the public.

It is recognized that situations may arise that do not fall within the provisions set forth in this policy. Such events require consideration of the totality of the circumstances and the use of an objective reasonableness standard applied to the decision to use a canine.

Absent a reasonable belief that a suspect has committed, is committing or is threatening to commit a serious offense, mere flight from a pursuing deputy, without any of the above conditions, shall not serve as the basis for the use of a canine to apprehend a suspect.

Use of a canine to locate and apprehend a suspect wanted for a lesser criminal offense than those identified above requires approval from the Shift Sergeant. Absent a change in circumstances that present an imminent threat to deputies, the canine or the public, such canine use should be conducted on-leash or under conditions that minimize the likelihood the canine will bite or otherwise injure the individual.

In all applications, once the suspect has been located and no longer reasonably appears to present a threat or risk of escape, the handler should secure the canine as soon as it becomes reasonably practicable.

If the canine has apprehended the suspect with a secure bite, and the handler believes that the suspect no longer poses a threat, the handler should promptly command the canine to release the suspect.

(Doc. 6 at ¶ 17).  Regarding warnings, the guidelines provide:

308.6.2 WARNINGS AND ANNOUNCEMENTS

Unless it would increase the risk of injury or escape, a clearly audible warning announcing that a canine will be used if the suspect does not surrender should be made prior to releasing a canine. The handler should allow a reasonable time for a

4

suspect to surrender and should quiet the canine momentarily to listen for any verbal response to the warning. If feasible, other members should be in a location opposite the warning to verify that the announcement could be heard. If available, warnings given in other languages should be used as necessary.

If a warning is not to be given, the canine handler, when practicable, should first advise the supervisor of his/her decision before releasing the canine. In the event of an apprehension, the handler shall document in any related report how the warning was given and, if none was given, the reasons why.

(Doc. 6 at ¶ 18). Finally, regarding non-apprehension, the guidelines provide:

308.7 NON-APPREHENSION GUIDELINES

Properly trained canines may be used to track or search for non-criminals (e.g., lost children, individuals who may be disoriented or in need of medical attention). The canine handler is responsible for determining the canine's suitability for such assignments based on the conditions and the particular abilities of the canine. When the canine is deployed in a search or other non- apprehension operation, the following guidelines apply.

(a)     Absent a change in circumstances that presents an imminent threat to deputies, the canine, or the public, such applications should be conducted on-leash or under conditions that minimize the likelihood the canine will bite or otherwise injure the individual, if located.

(b)     Unless otherwise directed by a supervisor, assisting members should take direction from the handler in order to minimize interference with the canine.

(c)     Throughout the deployment, the handler should periodically give verbal assurances that the canine will not bite or hurt the individual and encourage the individual to make him/herself known.

(d)     Once the individual has been located, the handler should place the canine in a down-stay or otherwise secure it as soon as reasonably practicable.

(Doc. 6 at ¶ 19).

Plaintiff alleges that the County, the Department, Sheriff Stolzer and the Officers were required to know these policies and adhere to them, and that they had a duty to safely deploy Ares.  Plaintiff alleges that instead of following the guidelines, the County, the Department and Sheriff Stolzer have a custom or policy of allowing officers to stop and arrest individuals and use

excessive force with police dogs without probable cause, and that the County and Department have operated with deliberate indifference and have inadequate hiring and training practices regarding the proper use of force.

Plaintiff alleges that "defendants"[6] submitted a false deployment report regarding the use of Ares against Plaintiff and that the Officers prepared police reports with false information, asserting that Plaintiff had stolen a school bus that was observed in plain sight. Plaintiff alleges that Defendants used those reports to instigate Plaintiff's prosecution with the Ste. Genevieve County Prosecutor's Office, knowing that there was no stolen school bus or serious offense committed by Plaintiff. Plaintiff claims injury to his reputation.

On October 11, 2022, Plaintiff stood trial for resisting arrest and tampering with a school bus. Plaintiff was acquitted on the tampering charge related to the school bus and convicted by a jury in St. Francois County[7] of resisting arrest by flight in *State of Missouri v. John Dukeman*, 20SG-CR00705-02.[8]

## II. The Parties' Arguments

Defendants argue that all claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A. Federal Claims

The County Defendants argue that the § 1983 excessive force claims (Count I) against

---

[6] Plaintiff does not identify by name which defendants prepared or submitted a false deployment report.

[7] The docket for Plaintiff's criminal case, *State of Missouri v. John Dukeman*, 20SG-CR00705-02, conveys that although his case was prosecuted by Ste. Genevieve County, his trial took place in St. Francois County following a change of venue.

[8] Ordinarily a court's review of a Rule 12(b)(6) motion is limited to factual matters alleged in the complaint, but "in a motion to dismiss, a court may consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record.'" *United States ex rel. Kraxberger v. Kan. City Power & Light Co.*, 756 F.3d 1075, 1083 (8th Cir. 2014) (quoting *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)). Here, the complaint incorporates by reference Plaintiff's underlying criminal case (Doc. 6 at ¶ 109 n.2), which is also a matter of public record.

Deputy Placke, Sergeant Ochs, and Deputy Green in their official capacities are redundant with those against the County and should therefore be dismissed.  The Officers argue that they are entitled to qualified immunity on the individual capacity § 1983 claims (Counts I and III).

As to the § 1983 excessive force claim (Count I), the County Defendants assert that Plaintiff's conviction for resisting arrest precludes Plaintiff from alleging the Officers' purpose was unlawful when they deployed Ares on him and from disputing whether he heard police warnings about the use of the K-9.  As to the § 1983 failure to train, hire, supervise, and discipline claim (Count II), the County argues that Plaintiff failed to sufficiently allege a violation of a policy or custom.  As to the § 1983 malicious prosecution claim (Count III), Defendants assert that the law supporting the claim was not clearly established at the time the alleged constitutional violations took place.  As to the § 1985 conspiracy claim (Count V), Defendants assert that Plaintiff failed to state a claim because (1) Plaintiff fails to allege deprivation of equal protection of laws, (2) the intercorporate conspiracy doctrine applies, and (3) Plaintiff fails to plead with particularity overt acts by Defendants.

Plaintiff responds that his Missouri state conviction for resisting arrest does not preclude his claim of excessive force in effectuating his arrest on November 8, 2020.  Plaintiff further responds that his conviction does not prevent a malicious prosecution claim, which is predicated on his acquittal by a jury of the charge of tampering.  Plaintiff asserts that Defendants cannot invoke the defense of qualified immunity because Plaintiff has sufficiently alleged that they knowingly violated the law in bad faith.

### B.  State Law Claims

The County asserts that the state law claims against it and against the Officers in their official capacities are barred by sovereign immunity, and that the Department should be

---

[8] (Doc. 1-1 at 18 n.1); (Doc. 6 at ¶¶ 47-53, 94-96).

dismissed because it is not a justiciable entity.

Trooper Wyatt asserts that he is entitled to official immunity on the state law claims against him in his individual capacity (Counts IV, VI, VII, IX, X, and XI).  Trooper Wyatt also generally asserts that Plaintiff fails to plead sufficient facts about him to state a claim.

The County Defendants and Trooper Wyatt assert that the three-year statute of limitations under RSMo § 516.130(1) applies to the state law tort claims against the Officers (Counts VI, VII, IX, X, and XI) and that those claims should therefore be dismissed as untimely.  As to the state law claim of negligence per se (Count VII), Defendants further argue that Plaintiff fails to allege a violation of an ordinance or statute.  Defendants also contend that Plaintiff alleges *intentional*, not negligent, conduct.  As to the state law negligent supervision claim (Count VIII), Sheriff Stolzer asserts that Plaintiff fails to allege a legally recognized relationship between Sheriff Stolzer and the Officers that could form the basis of the claim.  As to the state law malicious prosecution claim (Count IV), Defendants argue that Plaintiff fails to sufficiently state all the elements of the claim.  Defendants assert that Count X should be dismissed because RSMo § 322.145 is intended for zoonotic disease and rabies transmission and is not applicable to the present case.

Plaintiff contends that the five-year statute of limitations under Mo. Rev. Stat. § 516.120 applies to the state law tort claims against the Officers in their individual capacities (Counts VI, VII, IX, X, and XI).  Plaintiff reiterates that his conviction does not prevent a malicious prosecution claim, which is predicated on his acquittal by a jury of the charge of tampering. Plaintiff asserts that Defendants cannot invoke the defense of sovereign immunity because Plaintiff has sufficiently alleged that they knowingly violated the law in bad faith.  Plaintiff also argues that the ministerial duty exception to official immunity applies to Defendants.

Additional facts and arguments will be discussed below as relevant to the parties' claims.

### III.  Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for a motion to dismiss based on the "failure to state a claim upon which relief can be granted."  To survive a motion to dismiss, a complaint must show "'that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (citation omitted).  The pleading standard of Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

"When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  But "[c]ourts are not bound to accept as true a legal conclusion couched as factual allegations, and factual allegations must be enough to raise a right to relief above the speculative level."  *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555).

### IV.  Discussion

#### *Claims against the Department (Counts I, IX, X, and XI)*

A sheriff's department is not an entity subject to suit in this case.  *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (ruling that departments or subdivisions of

9

local government are "not juridical entities suable as such"); *see also Brawley v. St. Louis Cnty. Police Dep't*, 2019 WL 2568664, at *3 (E.D. Mo. June 21, 2019) (dismissing claim against county police department because "a police department is not a juridical entity subject to suit"). Plaintiff's claims against the Department will be dismissed.

### *State Law Claims against the County (Counts VII, IX, X and XI)*

The County asserts that the state law claims against it for negligence per se (Count VII), § 273.03 strict liability (Count IX), § 322.145 strict liability (Count X), and negligence (Count XI) are barred by sovereign immunity under Missouri law (Doc. 3 at 4-5). In Missouri a public entity is protected from tort liability subject to two exceptions. Mo. Rev. Stat. § 537.600. Sovereign immunity is waived in cases involving (1) injuries arising out of a public employee's operation of motor vehicle or (2) injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury. *Id*. Public entities may also waive their sovereign immunity for governmental functions to the extent that they are covered by liability insurance. *Southers v. City of Farmington*, 263 S.W.3d 603, 609 (Mo. 2008), *as modified on denial of reh'g* (Sept. 30, 2008). "Plaintiffs bear the burden of demonstrating the existence of the insurance and that it covered their particular claim and must plead with specificity facts demonstrating their claim falls within an exception to sovereign immunity." *A.H. v. St. Louis Cnty., Mo.*, 2015 WL 4426234, at *5 (E.D. Mo. July 17, 2015) (internal quotation marks omitted) (quoting *Gregg v. City of Kansas City*, 272 S.W.3d 353, 359-60 (Mo. Ct. App. 2008)).

Plaintiff does not dispute that the County is a public entity and political subdivision of Missouri. (*See* Doc. 6 at ¶ 4). Instead, Plaintiff argues that the County's assertion of sovereign immunity fails because the allegations "involve bad faith, malice, and a breach of ministerial duty" (Doc. 42 at 2), and the County "purchased a policy of insurance for liability" (Doc. 1 at ¶

10

31).  Plaintiff is conflating the issues of sovereign immunity and official immunity, and the complaint fails to allege the existence of the insurance with sufficient specificity.  The Court finds that sovereign immunity applies to Plaintiff's claims for negligence per se (Count VII), § 273.03 strict liability (Count IX), § 322.145 strict liability (Count X), and negligence (Count XI) against the County.  Those claims will be dismissed.

The County further asserts that the state law claims against the Officers in their official capacities are barred by sovereign immunity (Doc. 3 at 2).  It is well-settled law that when a state or municipal official is sued in his official capacity, the claim is treated as a suit against the entity itself.  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  Therefore, the Court finds that sovereign immunity also applies to Plaintiff's official capacity claims against Sheriff Stolzer, Deputy Placke, Sergeant Ochs, and Deputy Green for state law malicious prosecution (Count IV), state law conspiracy (Count VI), negligence per se (Count VII), state law negligent supervision (Count VIII), § 273.03 strict liability (Count IX), § 322.145 strict liability (Count X), and negligence (Count XI).  Those claims will be dismissed.

### Monell *claims against the County (Counts I and II)*

Plaintiff asserts § 1983 claims against the County for excessive force (Count I) and failure to train, hire, supervise, and discipline (Count II) pursuant to *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 (1978).  Plaintiff alleges that the County "had a custom or policy of arresting, stopping, and using excessive force with K-9's towards individuals, without probable cause" and inadequately trained its officers on the proper use of a K-9 (Doc. 6 at ¶¶ 73-76).  Plaintiff further alleges that the specific K-9 in question, Ares, "had bitten, attacked and/or injured individuals on prior occasions" and that the County "[c]ontinued to allow the use of the canine in spite of viscious [sic] propensities and prior bites" (*Id.* at ¶¶ 77-78).  The County argues that Counts I and II fail to state a claim under *Monell*.

11

The County may be liable under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the County. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 (1978).  At issue with both Counts I and II is whether Plaintiff sufficiently alleges that "execution of [the County's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," resulted in the constitutional injury.  *Monell*, 436 U.S. at 694.  Moreover, as to Count II, "[f]ailure to supervise employees may establish a *Monell* claim if there is proof that the failure amounts to deliberate indifference to the rights of persons with whom the employee comes into contact."  *Varela v. Hill*, 2024 WL 1328265, at *6 (E.D. Mo. Mar. 28, 2024) (internal quotation marks and alterations omitted) (quoting *S.M. v. Lincoln County*, 874 F.3d 581, 585 (8th Cir. 2017)); *see also Stewart v. Maze*, 2022 WL 558084, at *3 (E.D. Mo. Feb. 24, 2022) (liability may attach if plaintiff alleges that a constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise") (quoting *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018)).

Plaintiff primarily alleges that the unconstitutional K-9 bites resulted from the County's deliberately indifferent failure to train or supervise.  "Deliberate indifference ... is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *S.M.*, 874 F.3d at 585.  "The issue is whether, in light of the duties assigned to specific officers or employees the need for more or different training or supervision is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."  *Id.* (internal quotation marks and alterations omitted) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  "A pattern of similar constitutional violations by untrained

employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).

Plaintiff's allegations are largely conclusory recitations of the elements of a failure to train claim.  (*See* Doc. 6, ¶¶ 80-88).  Plaintiff also briefly alleges that the County "had a custom or policy of arresting, stopping, and using excessive force with K-9's towards individuals, without probable cause" (Doc. 6 at ¶73), but with no further factual allegations on this point.  *See Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021) ("[T]he Court is not bound to accept as true a legal conclusion couched as a factual allegation.") (quoting *Iqbal*, 556 U.S. at 678).  Plaintiff's assertion that the K-9 Ares had "bitten, attacked and/or injured individuals on prior occasions," or had "viscous [sic] propensities and prior bites" does not specify prior incidents of *unconstitutional* bites.  (*See* Doc. 6 at ¶ 77-78).  As Plaintiff notes elsewhere in the complaint, the County had policies in place outlining appropriate situations and procedures for K-9 bites.  Plaintiff does not identify a single prior occasion of an *unconstitutional* dog bite involving Ares or one of the Officers, nor does Plaintiff allege that deployment of a K-9 is *per se* unconstitutional.

The Court finds that Plaintiff's allegations are insufficient to state a claim against the County under § 1983 for excessive force (Count I) or failure to train, hire, supervise, and discipline (Count II).  Those claims will be dismissed.

### *Official Capacity Claims against Individual Defendants (Counts I, III, IV, V, VI, VII, VIII, IX, X, and XI)*

The County Defendants argue that the official capacity claims against Sheriff Stolzer, Deputy Placke, Sergeant Ochs, and Deputy Green for § 1983 excessive force (Count I) should be dismissed as redundant.  "It is proper for a court to dismiss a claim against a government officer in his official capacity as duplicative or redundant if the claims are also asserted against the

officer's governmental employer." *Caruso v. City of St. Louis*, 2016 WL 6563472, at *1 (E.D. Mo. Nov. 4, 2016) (citing *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) and *Bonenberger v. City of St. Louis*, 2016 WL 5341113, at *2 (E.D. Mo. Sept. 23, 2016)). Because the County was also named as a defendant, the official capacity claims against the County Officers for § 1983 excessive force (Count I) will be dismissed.

By contrast, Plaintiff brings his § 1983 malicious prosecution claim (Count III) against Sheriff Stolzer, Deputy Placke, Sergeant Ochs, and Deputy Green, but not against the County itself. When a plaintiff sues a public employee in his official capacity, plaintiff really is suing "only the public employer and therefore must establish the municipality's liability for the alleged conduct." *Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016). Thus, dismissal turns on whether Plaintiff's allegations would nonetheless state a claim against the County.

As explained *supra*, Plaintiff can establish municipal liability under § 1983 if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the County. *Monell*, 436 U.S. at 690. Although the complaint need not "specifically plead the existence of an unconstitutional policy or custom," still "the complaint must allege, at a minimum, facts which would support the existence of an unconstitutional policy or custom." *Holloway v. Ameristar Casino St. Charles, Inc*, 2008 WL 762086, at *4 (E.D. Mo. Mar. 19, 2008) (internal citation and quotation marks omitted).

Plaintiff fails to allege any such facts with respect to his § 1983 malicious prosecution claim (Count III). The heart of Plaintiff's allegations is that "Defendant[s] Placke and Ochs executed an Incident Report alleging, among other things, that Mr. Dukeman had stolen a school bus, when in fact, the school bus was sitting in plain sight" (Doc. 6 at ¶¶ 92-94). These allegations do not sufficiently suggest an unconstitutional policy or custom. Accordingly, the

14

official capacity claims against the County Officers for § 1983 malicious prosecution (Count III) will be dismissed.[9]

In addition, Trooper Wyatt asserts that sovereign immunity bars all the claims against him in his official capacity (Counts I, III, IV, V, VI, VII, IX, X, and XI) (Doc. 10 at 1). "A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). "As such, it is no different from a suit against the State itself." *Id*. "Neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.*; *see also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "suit for damages against a state official in his official capacity is a suit against the State, and the State is not a person under § 1983"). To the extent Plaintiff alleges claims under §§ 1983 and 1985, and state law claims against Trooper Wyatt in his official capacity, those claims are barred by sovereign immunity. *See Rodgers v. Univ. of Missouri Bd. of Curators*, 56 F. Supp. 3d 1037, 1050 (E.D. Mo. 2014) (internal citations omitted) (finding claims under §§ 1981, 1983, 1985, 1986, and Fourteenth Amendment and state law claims against individual state officials in their "official capacities" were barred by sovereign immunity), *aff'd as modified sub nom. Rodgers v. Curators of Univ. of Missouri Sys.*, 634 F. App'x 598 (8th Cir. 2015). For these reasons and for the reasons described *supra* as to the state claims against the County, all claims against Defendant Wyatt in his official capacity will be dismissed.

### *Individual Capacity Claims*

The Court now turns to Plaintiff's claims against Sheriff Stolzer, Sergeant Ochs, Deputy Green, Deputy Placke, and Trooper Wyatt in their individual capacities for § 1983 excessive

---

[9] Because the Court finds that Plaintiff does not state the requisite elements for conspiracy under § 1985 (Count V), *see infra*, the Court need not separately address Plaintiff's claims against the County Officers in their official capacities in Count V.

force (Count I), § 1983 malicious prosecution (Count III), state law malicious prosecution (Count IV), § 1985 conspiracy (Count V), state law conspiracy (Count VI), negligence per se (Count VII), negligent supervision (Count VIII), § 273.036 strict liability (Count IX), § 322.145 strict liability (Count X), and negligence (Count XI).  The Court will address each claim in turn.

### A.  § 1983 Excessive Force (Count I)

Plaintiff alleges that Sheriff Stolzer, Sergeant Ochs, Deputy Green, Deputy Placke and Trooper Wyatt violated the Fourth Amendment by using excessive force during his arrest (Doc. 6 at ¶¶ 45-71).  Specifically, Plaintiff alleges that Ares, handled by Sergeant Ochs, bit, scratched, and otherwise injured Plaintiff after he had already surrendered and was presenting no resistance (*Id.* at ¶¶ 51-64).  He further alleges that Deputy Green and Trooper Wyatt failed to intervene (*Id.* at ¶ 55).  He alleges that Sheriff Stolzer, as the supervisor to Deputy Placke, Sergeant Ochs, and Deputy Green, had "final policy making authority" (*Id.* at ¶¶ 157-62).  The Court will address the allegations against Sheriff Stolzer and Deputy Placke first, and then turn to the remaining officers' arguments regarding collateral estoppel, qualified immunity, and failure to state a claim.

#### i.  Sheriff Stolzer

"[N]either municipalities nor government officials may be held liable for unconstitutional conduct under a theory of respondeat superior."  *Cole v. Does*, 571 F. Supp. 3d 1033, 1042 (D. Minn. 2021) (internal quotation marks omitted) (quoting *Rogers v. King*, 885 F.3d 1118, 1122 (8th Cir. 2018)).  "To state a claim against a supervisor, a plaintiff must show that the supervising official, through his own individual actions, violated the Constitution."  *Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020).

"[A] supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the

16

offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010).

Plaintiff makes no allegations that Sheriff Stolzer directly participated in the unconstitutional use

of the K-9 during Plaintiff's arrest, nor does Plaintiff allege that he was even present at the scene.

Thus, Sheriff Stolzer could only be liable for failure to train or supervise. To adequately plead

failure to train or supervise under § 1983, a plaintiff must establish four elements: (1) the

supervisor was on "notice of a pattern of unconstitutional acts committed by subordinates;" (2)

the supervisor "was deliberately indifferent to or tacitly authorized" the pattern of

unconstitutional acts; (3) the supervisor failed to take "sufficient remedial action" to address the

pattern of unconstitutional acts; and (4) the supervisor's failure to remedy the pattern of

unconstitutional acts proximately caused the plaintiff's injury. *Cole*, 571 F. Supp. 3d at 1043

(citing *Perkins v. Hastings*, 915 F.3d 512, 524 (8th Cir. 2019)).

Plaintiff makes no allegations about Sheriff Stolzer's failure to train or supervise with

respect to Count I. To the extent Plaintiff makes failure to train or supervise allegations

regarding Sheriff Stolzer elsewhere in the complaint, the Court does not find them relevant and

will not consider them with respect to Count I. Plaintiff does not specify a single prior incident

of misconduct by a Ste. Genevieve County officer under Sheriff Stolzer's command, "much less

a *pattern* of excessive force of which [Sheriff Stolzer] was *aware*." *Cole*, 571 F. Supp. 3d at

1045 (emphasis added). Plaintiff's allegations are too conclusory and speculative to allege a

plausible § 1983 excessive force claim against Sheriff Stolzer under a failure to train or supervise

theory. Accordingly, the § 1983 excessive force claim against Sheriff Stolzer will be dismissed.

### ii. Deputy Placke

The complaint does not establish that Deputy Placke was present for Plaintiff's arrest, nor

does it not allege facts that Deputy Placke used force against Plaintiff or had the opportunity to

intervene in the use of the K-9. Plaintiff specifies acts by Sergeant Ochs, Deputy Green, and

Trooper Wyatt in furtherance of the alleged constitutional violation.  (*See* Doc 6 at 52, 55, 59, 65).  He does not provide any such description of Deputy Placke's acts, nor even clarify whether Deputy Placke bore witness to the deployment of Ares.  The bare allegation that Deputy Placke acted "in concert" with Sergeant Ochs, Deputy Green, and Trooper Wyatt, is conclusory and insufficient to state a claim.  (*See* Doc. 6 at ¶ 46).  Accordingly, the § 1983 excessive force claim against Deputy Placke will be dismissed.

### iii.  Collateral Estoppel

Sergeant Ochs, Deputy Green, and Trooper Wyatt argue that Count I should be dismissed due to collateral estoppel.  Although the parties dedicate much argument to debating the applicability (or lack thereof) of the Supreme Court's decision in *Heck v. Humphrey* to the present case, *Heck*'s holdings have limited relevance here.  512 U.S. 477 (1994).  In *Heck*, the Court held that a plaintiff may not recover damages under § 1983 where the judgment would "necessarily imply the invalidity of his conviction or sentence," unless the conviction or sentence has already been invalidated.  *Id.* at 487.

Plaintiff acknowledges that he was "convicted of resisting arrest by flight" in relation to the arrest at issue (Doc. 6 at 18 n. 1).  To the extent that any of Plaintiff's claims rely on his assertions that he "in no way resisted arrest" (Doc. 6 at ¶¶ 65, 95), Plaintiff is "*Heck*-barred from relitigating his guilt."  *Anderson v. Hernandez*, 2024 WL 3042797, at *10 (E.D. Mo. June 18, 2024).  However, as Defendants themselves concede, "there is no inherent conflict between a conviction for resisting arrest or harassment of a police officer and a finding that the police officers used excessive force in effectuating the arrest."  *Colbert v. City of Monticello, Ark.*, 775 F.3d 1006, 1008 (8th Cir. 2014) (internal quotation marks and alterations omitted) (quoting *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000)).  Count I is not barred by collateral estoppel.

18

### iv.  Qualified Immunity

Sergeant Ochs, Deputy Green, and Trooper Wyatt assert that they are entitled to qualified immunity.  In determining whether an officer is entitled to qualified immunity, the Court employs a two-step analysis that asks: (1) whether the alleged facts, when taken in the light most favorable to the plaintiff, demonstrate that the official's conduct violated a constitutional right; and (2) whether the constitutional right being asserted is clearly established.  *Wallingford v. Olson*, 592 F.3d 888, 892 (8th Cir. 2010).  The Court has "the discretion to decide which of the two prongs of qualified-immunity analysis to tackle first."  *Lombardo v. City of St. Louis*, 38 F.4th 684, 690 (8th Cir. 2022) (internal citations and quotation marks omitted).  "If either question is answered in the negative, the public official is entitled to qualified immunity."  *Norris v. Engles*, 494 F.3d 634, 637 (8th Cir. 2007) (internal quotation marks and citations omitted).  "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Adams v. City of Cedar Rapids*, 74 F.4th 935, 938 (8th Cir. 2023) (internal quotation marks, citations, and alterations omitted).

On a motion to dismiss, the analysis of these two steps depends entirely upon the allegations in the complaint.  *See Dornheim v. Sholes*, 430 F.3d 919, 926 (8th Cir. 2005) ("A rule 12(b)(6) dismissal based on qualified immunity is appropriate 'when the immunity is established on the face of the complaint.'") (quoting *Whisman v. Rinehart*, 119 F.3d 1303, 1309 (8th Cir. 1997)).  Sergeant Ochs, Deputy Green, and Trooper Wyatt "must show that they are entitled to qualified immunity on the face of the complaint."  *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005).

In considering qualified immunity, "each [Defendant's] conduct must be independently assessed ... because liability for damages for a federal constitutional tort is personal."  *Cross v.*

*Mokwa*, 547 F.3d 890, 898 (8th Cir. 2008) (internal quotation marks omitted).  The County

Defendants fail to specifically address the actions of Sergeant Ochs or Deputy Green, but the

Court will analyze them in the interests of justice.

Plaintiff asserts, *inter alia*, that the Officers failed to give a clear warning regarding the

use of the K-9 Ares.  (*See* Doc. 6 at ¶ 24).  The Eight Circuit has identified its holdings in *Kuha*

*v. City of Minnetonka*, 365 F.3d 590 (8th Cir. 2003) and *Szabla v. City of Brooklyn*, 486 F.3d 385

(8th Cir. 2007) as clearly establishing the constitutional requirement to "provide an adequate

warning when searching with [a] police dog trained to bite and hold."  *Adams v. City of Cedar*

*Rapids*, 74 F.4th 935, 939 (8th Cir. 2023).  Notably, in *Adams* the Eight Circuit also

acknowledged "an opportunity for peaceful surrender" as a right underlying the warning

requirement, also established in *Kuha* and *Szabla*.  *Id.* at 940.

Defendants briefly touch on the argument that the warning requirement was not clearly

established, but they place more emphasis on the suggestion that a warning took place and that

the "issue is not whether Plaintiff actually heard the warnings, but whether it was objectively

reasonable for law enforcement to believe the suspect would have heard the warnings provided"

(Doc. 5 at 6).  This assertion ignores this Court's obligation to "accept as true all of the factual

allegations contained in the complaint."  *Erickson*, 551 U.S. at 94; *see also Tolan v. Cotton*, 572

U.S. 650, 657 (2014) (cited in *Adams*, 74 F.4th at 939) ("Our qualified-immunity cases illustrate

the importance of drawing inferences in favor of the nonmovant").

Plaintiff alleges that the Officers did *not* provide adequate warnings concerning the use of

the K-9 (Doc. 6 at 9).  Accepting Plaintiff's allegations as true, the Officers did not provide him

the opportunity to peacefully surrender and, as a result, the K-9 injured Plaintiff.  *See Adams*, 74

F.4th at 939 ("Taking the facts most favorably to [plaintiff], the district court correctly assumed

he did not hear the warnings and did not have an opportunity to surrender.").  Under Plaintiff's

20

facts, the Officers violated a constitutional right that was clearly established.  In other words, Plaintiff sufficiently pled that the use of the K-9 Ares violated Plaintiff's clearly-established right to a warning and opportunity for peaceful surrender because Ares was trained to bite and hold. The Court finds that Sergeant Ochs, Deputy Green, and Trooper Wyatt are not entitled qualified immunity on Count I.

### v. Failure to State a Claim

Defendants further argue that Plaintiff fails to state a claim for Count I (Docs. 5 at 5-8, 11 at 12-13).  To state a claim under § 1983, a plaintiff must establish (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation of that right was committed by a person acting under color of state law.  *West v. Atkins,* 487 U.S. 42, 48 (1988).  For constitutional purposes, "the amount of force used [by an officer] must be objectively reasonable under the particular circumstances."  *Franklin v. Saint Louis Cnty., Missouri*, 527 F. Supp. 3d 1060, 1070 (E.D. Mo. 2021) (internal quotation marks omitted) (quoting *Greiner v. City of Champlin*, 27 F.3d 1346, 1354 (8th Cir. 1994).  "Several factors influence whether force was reasonable, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.* (internal citations and quotation marks omitted).

The complaint identifies Defendant Ochs as the handler of the K-9 Ares and alleges that Defendant Ochs, upon seeing Plaintiff and in the course of arresting him, sicced Ares on him and allowed Ares to bite Plaintiff numerous times despite Plaintiff's surrender (Doc. 6 at ¶¶ 38, 51-55, 64).  Accepting Plaintiff's allegations as true, Plaintiff clearly states a claim against Sergeant Ochs.

The complaint's allegations that Deputy Green and Trooper Wyatt were present, saw the

attack, and failed to intervene (*Id.* at ¶¶ 51-55) likewise state a claim. "[A]n officer who fails to intervene to prevent the unconstitutional use of excessive force by another officer may be held liable for violating the Fourth Amendment." *Nance v. Sammis*, 586 F.3d 604, 612 (8th Cir. 2009); *see also Franklin*, 527 F. Supp. 3d at 1072 (holding that plaintiff stated a claim for unconstitutional use of excessive force against defendants that "stood by" as another defendant tased plaintiff and "did not intervene to stop it") (citing *Nance*, 586 F.3d at 612). Although relatively scant, Plaintiff's allegations against Deputy Green and Trooper Wyatt are sufficient at this "initial review stage of the litigation." *Billy Ray v. Anne L. Precythe, et al.*, 2024 WL 5008304, at *5 (E.D. Mo. Dec. 6, 2024). Plaintiff adequately states a § 1983 claim for excessive force (Count I) against Sergeant Ochs, Deputy Green, and Trooper Wyatt.

### B. § 1983 Malicious Prosecution (Count III)

Plaintiff brings another § 1983 claim against the Officers alleging malicious prosecution under the Fourth Amendment. Specifically, he alleges that the Officers "instigated [his] prosecution" for tampering with a motor vehicle, for which he stood trial and was acquitted by a jury (Doc. 6 at ¶¶ 93, 96). He further alleges that Deputy Placke and Sergeant Ochs maliciously prepared documents, including an Incident Report and a Statement of Probable Cause, that contained false statements in furtherance of this prosecution (*Id.* at ¶¶ 94, 97-99). Defendants argue that the Officers are entitled to qualified immunity (Docs. 3 at 3, 10 at 1).

The Supreme Court recognized malicious prosecution as a viable claim under the Fourth Amendment in 2022. *Thompson v. Clark*, 596 U.S. 36 (2022); *see also Klein v. Steinkamp*, 44 F.4th 1111, 1115 (8th Cir. 2022) ("[T]he Supreme Court recently declared that malicious prosecution is actionable under the Fourth Amendment."). "A plaintiff must show that (1) the criminal proceeding was instituted without probable cause, (2) the defendant's motive in instituting the proceeding was malicious, and (3) the prosecution terminated in acquittal or

discharge of the accused." *Klein v. Steinkamp*, 44 F.4th 1111, 1115 (8th Cir. 2022).

As an initial matter, Plaintiff makes no specific allegations with respect to Deputy Green and Trooper Wyatt for this claim. Plaintiff does not detail any acts by Deputy Green and Trooper Wyatt in furtherance of his prosecution, but merely asserts that they "instigated [his] prosecution" (Doc. 6 at ¶ 93). This amounts to a "[t]hreadbare recital[] of the elements of a cause of action" that is insufficient to state a claim. *Iqbal*, 556 U.S. 662; *see also Ashcroft*, 556 U.S. at 678 (noting that although "detailed factual allegations" are not required in a pleading, it is not sufficient to offer "naked assertion[s]" that are "devoid of further factual enhancement.") (internal citations and quotation marks omitted). Accordingly, § 1983 malicious prosecution claims against Deputy Green and Trooper Wyatt will be dismissed.

The Court now turns to the question of whether Deputy Placke and Sergeant Ochs are entitled to qualified immunity. Defendants argue that malicious prosecution was not a clearly established constitutional violation at the time the alleged conduct occurred. They point out that Plaintiff alleges that Deputy Placke and Sergeant Ochs executed a false Incident Report "on or about November 8, 2020" (Doc. 6 at ¶ 94), before the Supreme Court's 2022 *Thompson* decision recognized malicious prosecution as a §1983 cause of action.

A recent decision in this district is on point. *See Pleus v. Hoeh-Pistorio*, No. 1:23-CV-196-MTS, 2024 WL 3161617, at *4 (E.D. Mo. June 25, 2024). The *Pleus* court considered facts similar to those at issue here—alleged acts from 2020 under a § 1983 malicious prosecution claim—and ruled that the officer defendants were entitled to qualified immunity because the right to be free from malicious prosecution under the Fourth Amendment was only clearly established by the Supreme Court's 2022 *Thompson* decision. *Id.* The court reasoned, "[b]ecause of the time discrepancy, it cannot be said that it was sufficiently clear that every reasonable official would have understood that what he was doing violated that right." *Id.*

23

(internal quotation marks and alterations omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)); *see also Garner v. Green*, 2022 WL 2193038, at \*4 (E.D. Ark. June 17, 2022) (holding that a "constitutional right against malicious prosecution was not clearly established" prior to *Thompson* because the "Eighth Circuit has never recognized a stand-alone claim for malicious prosecution under § 1983.").

The undersigned agrees with the *Pleus* court. At the time of the alleged conduct, the Eight Circuit had "*declined to decide* whether a Fourth Amendment right against malicious prosecution exists" and had not provided clarity such that "reasonable officials" would have understood that they were violating a plaintiff's constitutional right against malicious prosecution. *Bates v. Hadden*, 576 F. App'x 636, 639 (8th Cir. 2014) (emphasis in original); *see also Robinson v. Norling*, 25 F.4th 1061, 1063 (8th Cir. 2022) (holding that a "claim of malicious prosecution, without more, does not state a constitutional claim" and "[w]hatever 'more' is required, [plaintiff] does not provide it.") (internal quotation marks and citations omitted). The Court finds that the right to be free from malicious prosecution under the Fourth Amendment was not clearly established at the time of the incidents in question and therefore Deputy Placke and Sergeant Ochs are entitled to qualified immunity. Accordingly, Count III will be dismissed in its entirety.

### C. § 1985 Conspiracy (Count V)

Plaintiff brings a claim against the Officers and Sheriff Stolzer under 42 U.S.C. § 1985 for conspiring "to deprive Plaintiff of his constitutional rights under the 4th and 14th Amendment[s]" by "agreeing together to write false police reports regarding their assault and arrest of Plaintiff, and by delivering such reports to the Ste. Genevieve County Prosecutor's Office" (Doc. 6 at ¶ 123). The elements of a such a claim are as follows:

In order to prove the existence of a civil rights conspiracy under § 1985(3), the

24

> [plaintiff] must prove: (1) that the defendants did "conspire," (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the laws," (3) that one or more of the conspirators did, or caused to be done, "any act in furtherance of the object of the conspiracy," and (4) that another person was "injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States.

*Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 684 (8th Cir. 2012) (quoting *Larson by Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996) and 42 U.S.C. § 1985(3)).  "In general, a § 1985 conspiracy claim must be alleged with particularity and specifically demonstrate with material facts that the defendants reached an agreement."  *Potter v. St. Charles Cnty.*, 2024 WL 324091, at *3 (E.D. Mo. Jan. 29, 2024) (internal citations and quotation marks omitted), *aff'd*, 2024 WL 4102029 (8th Cir. May 14, 2024).  Moreover, "to maintain an action under 42 U.S.C. § 1985(3), a plaintiff must allege that the conspiracy is fueled by some class-based, invidiously discriminatory animus."  *Id.* (internal quotation marks omitted) (quoting *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1077 (8th Cir. 2016)).

Plaintiff fails to make any equal-protection allegations.  Dismissal is appropriate on those grounds alone.  *See Gaines v. Windsor C-1 Sch. Bd.*, 2024 WL 3427251, at *9 (E.D. Mo. July 16, 2024) (dismissing plaintiff's § 1985 claim because Plaintiff "must allege facts showing that defendants conspired for the purpose of depriving him of equal protection of the laws, or equal privileges and immunities under the laws" and plaintiff "makes no such equal-protection assertions here").  Plaintiff also fails to allege any specific and material facts demonstrating that the Officers and Sheriff Stolzer came to an agreement.  Plaintiff's claims are conclusory and insufficient to support a §1985 claim.  Count V will be dismissed in its entirety.

### D.  State Law Claims (Counts IV, VI, VII, VIII, IX, X, and XI)

#### i.  Malicious Prosecution (Count IV)

Plaintiff also brings a claim of state law malicious prosecution against the Officers.  The

factual allegations are substantially the same as those in Count III (Doc. 6 at ¶¶ 109-21).  For the same reasons described *supra*, the Court finds that Plaintiff has not alleged sufficient facts with respect to Deputy Green and Trooper Wyatt to state a claim for malicious prosecution against them under Missouri law.

Plaintiff also fails to state a claim for state law malicious prosecution against Deputy Placke and Sergeant Ochs.  A claim for malicious prosecution under Missouri law requires that Plaintiff establish: (1) commencement of an earlier suit against plaintiff, (2) instigation of the suit by defendant, (3) termination of the suit in plaintiff's favor, (4) lack of probable cause for the suit, (5) malice by defendant in instituting the suit, and (6) damage to plaintiff resulting from the suit.  *Edwards v. Gerstein*, 237 S.W.3d 580, 582 (Mo. 2007).  "Because malicious prosecution suits countervail the public policy that the law should encourage citizens to aid in the uncovering of wrongdoing the courts require strict compliance with the requisite elements."  *Id.* at 583 (citing *Sanders v. Daniel Int'l Corp.*, 682 S.W.2d 803, 806 (Mo. 1984)); *see also Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 823 (8th Cir. 2010) (noting that "[a]ctions for malicious prosecution have never been favorites of the law" in Missouri) (internal quotation marks omitted) (quoting *Sanders*, 682 S.W.2d at 806).

There is no dispute about whether the complaint adequately alleges the first and third elements of the claim.  Defendants dispute the elements regarding lack of probable cause and instigation of the suit.  Because the Court finds that Plaintiff has not adequately alleged the probable cause element, the Court need not address instigation.

"Probable cause [to prosecute] is reasonable cause and may be defined as the existence of such a state of facts as would warrant an ordinarily cautious and prudent [person] in the belief that the accused was guilty of the offense charged."  *Daniels v. Terranova*, 611 S.W.3d 799, 814 (Mo. Ct. App. 2020) (alterations in original) (quoting *Higgins v. Knickmeyer-Fleer Realty & Inv.*

*Co.*, 74 S.W.2d 805, 813 (Mo. 1934)).  "In deciding whether plaintiff proved the absence of probable cause, it is necessary to consider the manner in which the charge originated, because if the charge is initiated by indictment by a grand jury or by a prosecuting attorney on his sworn information and belief, either amounts to a *prima facie* showing that probable cause did exist for the prosecution." *Baker v. St. Joe Mins. Corp.*, 744 S.W.2d 887, 889 (Mo. Ct. App. 1988) (internal quotation marks omitted) (quoting *Hamilton v. Krey Packing Company*, 602 S.W.2d 879 (Mo. Ct. App. 1980)).  Here, the prosecution was commenced by the sworn information of the prosecutor based on his information and belief (Doc. 5-1 at 3), establishing a *prima facie* showing of probable cause.  *Baker*, 744 S.W.2d at 889.

Plaintiff has made no factual allegations to refute that showing.  He only asserts that Deputy Placke and Sergeant Ochs "instigated [Plaintiff's] prosecution wrongfully, maliciously, fraudulently, and without probable cause" (Doc. 6 at ¶ 98).  *See Linn v. Moffitt*, 73 S.W.3d 629, 635 (Mo. Ct. App. 2002) (finding that, because plaintiffs must plead "all elements, including the absence of probable cause for the prosecution," the plaintiff's allegation that the "criminal prosecution was improper and without probable cause" was insufficient to state a claim for malicious prosecution).  He characterizes the statements in their Incident Reports and Statement of Probable Cause as false, but only with the elaboration that they alleged "[Plaintiff] had stolen a school bus, when in fact, the school bus was sitting in plain sight" (*Id.* at ¶¶ 97, 111).  The visibility of the school bus does nothing to rebut the potential commission of a crime.  Moreover, "[w]here a *prima facie* showing of probable cause exists, as here, the fact that plaintiff was acquitted does not, without more, create a genuine issue of fact on that issue." *Id.*  The Court finds that Plaintiff has not sufficiently pled the absence of probable cause and will accordingly dismiss Count IV.

## ii.  Statute of Limitations (Counts VI, VII, VIII, IX, X, and XI)

27

Defendants argue that the statute of limitations bars Plaintiff's state law claims against the Officers and Sheriff Stolzer for conspiracy (Count VI), negligence per se (Count VII), negligent supervision (Count VIII), § 273.03 strict liability (Count IX), § 322.145 strict liability (Count X), and negligence (Count XI) (Docs. 5 at 14-19, 11 at 4).  "A court may dismiss a claim under Rule 12(b)(6) as barred by the statute of limitations if the complaint itself establishes that the claim is time-barred."  *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011).  Plaintiff argues that the five-year statute of limitations under RSMo § 516.120 applies, while Defendants assert that the three-year statute of limitations under RSMo § 516.130 applies.  (Docs. 3 at 4-5, 10 at 1, 42 at 5-7).  Because the incidents in question took place on or around November 8, 2020 (Doc. 6 at ¶ 47) and Plaintiff filed his claims on July 2, 2024, the determination of the applicable statute will determine whether Plaintiff's state law claims are time-barred.

Section 516.130 states that a plaintiff must bring "an action against a sheriff, coroner, or other officer, upon a liability incurred by the doing of an act in his official capacity and in virtue of his office, or by the omission of an official duty" within three years.  The dispute between the parties arises from the phrase "doing of an act in his official capacity."  Defendants argue that the Officers and Sheriff Stolzer were acting in their official capacities during the relevant events, bringing the claims within Section 516.130's ambit.  Plaintiff asserts that the three-year statute of limitations only applies to official capacity claims, and not to the claims against the Officers and Sheriff Stolzer in their individual capacities.

Judges in this district and the Western District of Missouri have subscribed to Plaintiff's position in the past.  *See Shegog v. City of Herculaneum*, No. 4:22-CV-1290-SRW, 2023 WL 3845691, at *3 (E.D. Mo. June 6, 2023) (listing cases).  However, recent decisions in this district have come to the opposite conclusion.  "The phrase 'act in an official capacity' means that a public servant is acting within the scope of what he or she is employed to do rather than being

28

engaged in a personal frolic" and so "[i]n its plain and ordinary meaning, the phrase is used to delineate between an action performed for work purposes rather than for personal ones." *Rice v. City of Ferguson*, No. 4:19-cv-01563-SRC, 2020 WL 709249, at *3 (E.D. Mo. Feb. 12, 2020) (quoting *Kinder v. Missouri Department of Corrections*, 43 S.W.3d 369, 373 (Mo. Ct. App. 2001)); *see also Laramore v. Jacobsen*, 613 S.W.3d 466, 470 (Mo. Ct. App. 2020) (quoting the same language in *Kinder*, 43 S.W.3d at 373, and concluding that § 516.130 applied to plaintiff's claim because the officers were "doing an act in their official capacity as law enforcement officers" when performing the alleged conduct). "The plain language of [§ 516.130] states it applies to liabilities incurred 'by the *doing of an act* in his official capacity.'" *Shegog*, 2023 WL 3845691 at *3 (emphasis in original). "This refers to the act itself not the capacity in which a plaintiff sues a defendant." *Id*. When allegations against officers concern "acts they undertook as police officers for work purposes, not personal ones," the three-year statute of limitations of § 516.130 applies. *Id*.

The undersigned finds these recent decisions persuasive. Here, Plaintiff only alleges conduct by the Officers and Sheriff Stolzer—namely, the use of the K-9 in searching for and arresting Plaintiff and related supervisory deficiencies—performed in their roles as law enforcement officers. "Normally, the running of the statute is a question of law for the court to decide." *Lomax v. Sewell*, 1 S.W.3d 548, 552 (Mo. Ct. App. 1999). Contrary to Plaintiff's contention that this determination is one of fact for the jury (Doc. 42 at 5), there are no relevant *facts* that the parties contest on this issue. *See Powel v. Chaminade Coll. Preparatory, Inc.*, 197 S.W.3d 576, 585 (Mo. 2006), *as modified on denial of reh'g* (Aug. 22, 2006) (noting that the statute of limitations is "a matter of law" when "relevant facts are uncontested" and the standard is "objective"). Plaintiff nowhere alleges that the Officers and Sheriff Stolzer were acting otherwise than for work purposes, and merely argues that § 516.130 does not apply to his claims

29

against them in their individual capacities.  But Plaintiff is conflating two different legal concepts of "official capacity."  *See Shegog*, 2023 WL 3845691, at *3.  For the purposes of § 516.130's applicability, the Officers and Sheriff Stolzer were acting in their official, and not personal, capacities.

The Court finds that § 516.130's three-year statute of limitations applies to Plaintiff's state law claims against the Officers and Sheriff Stolzer.  Because the alleged conduct took place on or around November 8, 2020 (Doc. 6 at ¶ 47) and Plaintiff filed his claims on July 2, 2024, Plaintiff's remaining state law claims against the Officers and Sheriff Stolzer are time-barred.  Accordingly, Counts VI, VII, VIII, IX, X, and XI will be dismissed.

## V.  Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that the County Defendants' Motion to Dismiss (Doc. 3) and Trooper Wyatt's Motion to Dismiss (Doc. 10) are **GRANTED in part** and **DENIED in part**.  The individual capacity claims against Deputy Green, Sergeant Ochs, and Trooper Wyatt under Count I will be allowed to proceed.  All other claims are **DISMISSED**.

**IT IS FURTHER ORDERED** that this matter is set for a status conference on Tuesday, April 1, 2025 at 1:30 P.M., by Zoom, with all parties to appear by Zoom. Counsel will receive Zoom instructions by email in advance of the conference.

Dated this 24th day of March, 2025.


   /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE